IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| KELCEY ROCKEMORE, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION FILE NO.: |
| ) | |
| v. ) | |
| ) | 5:16-cv-00325-CAR |
| PHILLIP TOBIN (in both his ) | |
| individual and official capacity as a ) | |
| Thomaston Police Officer), and ) | |
| CITY OF THOMASTON ) | |
| ) | |
| Defendants. ) | |
| ) | |

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff hereby responds to Defendants' Motion for Summary Judgment as follows:

## INTRODUCTION AND RELEVANT FACTS

On June 11, 2014, Defendant Tobin unlawfully detained Plaintiff without cause, and then escalated that illegal detention into an unnecessary physical confrontation, arrest, and prosecution violating Plaintiff's constitutional rights. The entire exchange was captured on video.

Plaintiff went to Handy Mart on June 11, 2014. Plaintiff had never been told that he was not supposed to be on the premises. Plaintiff Dep. Vol 2 at 68. When

Defendant Tobin arrived, he had no knowledge of Plaintiff having committed any crimes by virtue of there being no active warrant. Tobin Dep. at 59. Defendant Tobin verbally stopped Plaintiff, approached Plaintiff to serve him with a criminal trespass warning, which may have been pretextual as Defendant Tobin actually didn't bring the warrant with him, and placed his hands on Plaintiff. *Compare* Tobin Dep. at 60-62 to Plaintiff Dep. Vol 2 at 66-69. According to Defendants, Plaintiff allegedly placed his hands in his pockets, a legal act, and Defendant Tobin used that alleged legal action by Plaintiff to justify physically assaulting, battering, continuously tazing, and, finally, arresting Plaintiff. Tobin Dep. at 68-71. Plaintiff insists he had never had his hands in his pocket at all, undermining any justification by Defendant Tobin for touching Plaintiff. Plaintiff Dep. Vol 2 at 113. Mr. Tobin admits that he immediately told Plaintiff that he was not allowed in the store upon seeing him, concluding any legal justification for talking to him. Tobin Dep. at 60.

Defendant Tobin's actions were without a warrant, and a clear violation of Plaintiff's fourth amendment right to be free from unlawful search and seizure, and his fourteenth amendment right to due process.

## STANDARD OF REVIEW

Summary judgment is only appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## ARGUMENT AND CITATION OF AUTHORITY

**A. Defendant Tobin had no legally justifiable reason to detain Plaintiff, and instead used the pretext of a trespass notification to justify unlawfully detaining, searching, assaulting, and arresting Plaintiff, defeating qualified immunity**

Plaintiff was detained, grabbed, battered, tased, and arrested for no legally justifiable reason whatsoever.

Mr. Rockemore was walking away from a building and almost to the street when Defendants detained Plaintiff. They falsely claim two contradictory stories: neither of which create legal justification, to attempt to justify their illegal and unconstitutional actions toward Plaintiff.

It is illegal, against common sense, and indisputably unconstitutional to arrest someone without cause. In fact, it is lawful to resist attempts, even by law enforcement officers, to arrest or detain someone illegally and without cause or authority. John Bad Elk v. United States, 177 U.S. 529, 537, 20 S. Ct. 729, 732, 44 L. Ed. 874 (1900).

The qualified immunity standard:

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.... Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."

Penley v. Eslinger, 605 F. 3d 843, 849 (11th Cir. 2010). Notably, this standard is more stringent that immunity under state law, which allows government officials to be liable for the negligent performance of ministerial duties.

An extremely recent case from two days ago, Perkins v. Thrasher, is illuminative of these issues. In Perkins, a citizen was charged with "obstruction of a law enforcement officer" after an officer insisted on talking to him and then "bucked" into the law enforcement officer when the law enforcement officer insisted on a pat down. In that case, the 11th Circuit panel essentially held that qualified immunity did not apply, as the officer cannot use his own actions to precipitate or provoke probable cause for an arrest for obstruction or disorderly conduct. Perkins v. Thrasher, 6-16292, 2017 WL 3049355, at *3 (11th Cir. July 19, 2017). As stated by the Court, "Perkins's conduct during the pat-down—buckling due to being hit in the groin—cannot serve as probable cause for an obstruction arrest if it was caused by Thrasher himself. And neither could Perkins's attitude during the encounter." Id. This is extremely similar to the case at bar,

where Plaintiff was being subjected to a pat-down, when there was no pre-existing probable cause or valid legal justification, and Plaintiff was being compliant. Similar to that case, here, Plaintiff insists that Defendant was pushing and physically manipulating Plaintiff, leading to the unlawful arrest. Plaintiff Dep. Vol 2 at 66-69. Plaintiff cannot be responsible for the results caused by Defendant Tobin's actions.

This is consistent with other 11th circuit case law, including <u>WBY Inc., et al. v. DeKalb County, et al.</u> and <u>German v. Sosa</u>. In <u>WBY Inc.</u>, a person who was not detained and was not suspected of having committed a crime, hesitated to obey an officer's instructions and was arrested for disorderly conduct, and on appeal was argued to have been arrested for obstruction. <u>WBY Inc., et al. v. DeKalb County, et al.</u>, 2017 WL 2609086, at *4–5 (11th Cir. June 16, 2017). In <u>WBY Inc.</u>, the Court held that such conduct could not form probable cause for either crime. <u>Id</u>. The Court further held that "…Georgia law clearly provides that citizens have no freestanding obligation to comply with a police officer's requests when the officer is not discharging a lawful duty. For example, when an officer detains an individual without reasonable suspicion, the "citizen is free to ignore requests and/or to walk away, and … no charge of obstruction [will] lie." (quoting <u>Stickland v. State</u>, 594 S.E.2d 711, 715-716 (Ga. Ct. App 2004).). This is extremely

persuasive to the case at bar. Plaintiff Rockemore was not suspected of committing a crime when he was approached by Defendant Tobin, and Defendant Tobin admitted he was free to go. Tobin Dep. at 63. Assuming either Plaintiff or Defendant's version of events as true, Plaintiff Rockemore did nothing to be suspected of any crime in his interaction with Defendant Tobin, and Plaintiff Rockemore had no obligation to comply with Defendant Tobin's commands. Plaintiff Dep. Vol 2 at 66-69. Yet Defendant Tobin still detained, battered and arrested him.

In German v. Sosa, a suspect ran from police was stunned with a stun gun, and then choked, after an officer saw marijuana in his mouth. German v. Sosa, 399 Fed. Appx. 554, 555 (11th Cir. 2010). In that case, the Court ruled for Defendants since the undisputed facts showed the sight of marijuana and flight from police, and that Plaintiff provided "no evidence either that Sosa did not possess these beliefs, or that these beliefs were objectively unreasonable based on the totality of the circumstances". German v. Sosa, 399 Fed. Appx. 554, 556 (11th Cir. 2010).

That case supports Plaintiff's position in the case at bar. Unlike in German, the totality of the circumstances and the evidence show that Defendant has no such justifications for his actions. Every act of Plaintiff in this case was perfectly legal, even assuming, *arguendo*, Defendants' version of events is true:

Plaintiff's action of walking away from the Handy Mart was legal.

Plaintiff having his hands in his pockets was legal.

Plaintiff not wanting to sign a form was legal.

Plaintiff defending himself against unlawful detention is legal.

While in German, it appears that there was a lawful investigation of someone who had committed a crime, here, there is no evidence Plaintiff committed any crime to be detained and investigated. *Id.* Here, the only crime that Plaintiff is alleged to have committed occurred in response to Defendant Tobin's unlawful actions toward Plaintiff.

Unlike in German, no one saw, or thought they saw, Plaintiff committing any crime. *Id.* In fact, Plaintiff has testified that he was doing nothing wrong and should have been allowed to leave. Plaintiff Dep. Vol 2 at 66-69.

Defendant Tobin clearly admits that the conclusion of his interaction with Plaintiff was simply telling him he wasn't allowed in the store, and states that the only reason he continued interacting with him was that he "reached in his pocket"…a perfectly legal action that free citizens are allowed to do. Compare Tobin Dep. at 65-66 to Tobin Dep. at 60.

While Defendants argue that Defendant Tobin had probable cause to arrest Plaintiff for criminal trespass, that argument fails both because Plaintiff has clearly

articulated he had not received notice, but more importantly because Defendant Tobin's arrest of Plaintiff was solely for "Obstructing or Hindering Law Enforcement Officers". Plaintiff Dep. Vol 2 at Exhibit 11. This undercuts Defendants' position that Defendant Tobin had any lawful reason for detaining Plaintiff, as well as Defendant Tobin's own testimony that Plaintiff was "free to go" when Defendant Tobin first interacted with Plaintiff on the day in question. Tobin Dep. at 63.

Plaintiff cannot be expected to definitively prove a negative, namely Defendant Tobin's state of mind. As Defendant Tobin clearly was not detaining or arresting Plaintiff for criminal trespass, as Defendant Tobin claims that Plaintiff was free to go at the beginning of their interaction, Defendant Tobin would have to be able to point to some crime he was investigating or that he was suspicious of, to justify detaining and investigating Plaintiff, including under Terry v. Ohio. Terry v. Ohio, 392 U.S. 1, 21 (1968). Here, unlike in Terry, Defendant Tobin clearly did not suspect Plaintiff of committing a burglary or any other crime before detaining and seizing him: he claims he would have let Plaintiff walk away. Compare Id. to Tobin Dep. at 63.

A law-enforcement officer may briefly detain and conduct a limited search of a person if the officer has a "reasonable suspicion" that the Defendant has

engaged or is about to engage in a crime. United States v. Acosta, 363 F.3d 1141 (11th Cir. 2004). In this case, however, there was no crime that Defendant Tobin claimed to be "suspicious" Plaintiff was committing: he admits he was just trying to "finish" his conversation with Plaintiff, estopping any claims that Defendant's physical actions toward Plaintiff were warranted. Tobin Dep. at 63.

In any event, Plaintiff has testified that Defendant Tobin simply targeted him and unlawfully escalated the interaction as a false justification for an unlawful arrest, which is clearly a disputed fact issue as shown by the video of the incident and the deposition testimony where Plaintiff notes that Defendant Tobin's demeanor and body language at the beginning of the interaction was one that communicated "I finally got your ass. You fixing to go down." Plaintiff Dep. at 66-69.

Ultimately, Plaintiff maintains that Defendant Tobin arrested Plaintiff simply because Plaintiff was not consenting to Defendant Tobin's unlawful actions. Id.

If Defendant Tobin had no cause to detain Plaintiff, or if Plaintiff was simply acting lawfully and ignoring unlawful commands, then all acts taken toward Plaintiff, including the grabbing, pushing, tazing, arrest, and prosecution were unlawful and are not protected by immunity from neither state, nor federal,

law claims. As all of Plaintiff's actions prior to his detention were legal ones, and his testimony and video directly contradicts Defendants' version of events, the only options are that either Defendant Tobin is fabricating cause in order to justify his actions toward Plaintiff, or Plaintiff is fabricating the interactions with Defendant.

Either way, this is a critical disputed fact, that all other facts hinge on, relies directly on the credibility of witnesses (namely the Plaintiff and the Defendant), and is a disputed material fact to be heard by a jury.

### B. The fact a warrant or indictment was issued does not prove that an arrest was lawful or defeat qualified immunity

Defendants seem to make the incorrect legal argument that a criminal prosecution bars the ability for the factual basis of an arrest to be challenged through 42 U.S.C. § 1983.

Plaintiff did not have any sort of probable cause hearing and no Court made any determination, through an <u>adversarial</u> hearing complying with due process, that Defendant Tobin's initial detention, search, or arrest of Plaintiff was lawful. Defendant's interpretation of the law would mean that any arrest with a warrant or indictment, even if said warrant or indictment was backed by false statements or testimony by an officer, would preclude civil vindication for rights violations against an offending officer. Naturally, this makes little sense, as a criminal

Defendant has no opportunity to prevent the issuing of an indictment from a Grand Jury, or at a police officer's request for a warrant. It also contradicts all the case law cited above.

Alternatively, such an interpretation would require criminal defendants to challenge probable cause in a criminal court to later bring a civil rights case. This is not the case. And none of these interpretations are supported by Defendants' cases which solely cite Georgia law, nor does Plaintiff believe any exist.

Plaintiff simply must show that his rights were violated, and that the alleged violation was clearly established law. Saucier v. Katz, 533 U.S. 201. Unlawful detention, searches, and arrest are clearly established rights violations as long ago as Terry. And it is clear that Plaintiff has presented plenty of evidence for a jury to conclude that Defendant Tobin, by harassing, detaining, tazing, and arresting Plaintiff, clearly violated his rights.

**C. Defendant Tobin's arrest of Plaintiff, being unlawful, made any use of force against Plaintiff unreasonable, while his continuous tazing of Plaintiff was egregious in any circumstance**

Contrary to Defendants' assertions, Plaintiff maintains that he was tased multiple times. Plaintiff Dep. Vol 2 at 103-105. Furthermore, Plaintiff also was not arrested for actually carrying out any unlawful actions, undermining any argument

that Defendant Tobin had probable cause for the arrest. Plaintiff Dep. Vol 2 at 70-73 and 83-86.

With the arrest of Plaintiff being unlawful, any force or handcuffing was inappropriate, as was any harm Plaintiff suffered from Defendants' actions. With Plaintiff simply minding his own business after departing from the Handy Mart, Defendant Tobin's detention of Plaintiff, for no crime, was unreasonable. His then actions of searching Plaintiff with the pretext of wanting "safety" (even though Plaintiff maintains his hands were not in his pockets), was also unlawful and unjustifiable. Plaintiff Dep. Vol 2 at 113. As Plaintiff maintains his hands were not in his pockets, there is yet again another critical fact issue for a jury, to determine if Defendant Tobin is fabricating his cause for having attacked Plaintiff and the severity of that attack. Any attack with a taser, if there was a complete lack of probable cause for an lawful arrest, would inherently be unreasonable.

**D. As the Defendant City of Thomaston had a stack of Complaints regarding Defendant Tobin that was over 3 to 4 inches thick, Defendant City clearly has responsibility for the rights violations against Plaintiff**

While Defendants naturally claim that they have adequate procedures for handling "complaints of misconduct by police officers", the evidence in the record clearly creates a fact issue for jury determination.

Defendant City of Thomaston admits that they had received a stack of complaints that was at least three inches tall regarding Defendant Tobin, and that they had chosen to substantiate none of them. Deposition of Corley at 98. The City even maintained that "If they're not getting complaints, you wonder about them because they're probably not out working." Deposition of Corley at 15-16. The City finally admits that complaints, overall, are considered substantiated "Very seldom" at the rate of "five percent at the most." Deposition of Corley at 99.

This environment regarding complaints is naturally defective. While it is naturally possible that Defendant City of Thomaston has an exceptionally well-trained police force that simply has a lot of complaints and very few officers that violate the law, it seems much more likely that based on the extremely large number of complaints and few of them being substantiated, that a police force could be covering for its own and creating an environment where poor behavior is tolerated or encouraged. With a philosophy that complaints show that officers are working, it even creates a perverse incentive to possibly do things that are wrongful in order to appear busy.

In any event, the truth of such an intensive fact-based matter is not appropriate for summary judgment, but for determination by a jury. Namely, whether or not Defendant City of Thomaston's apparent unwritten policy and

common practice of not holding officers accountable to citizen complaints is the responsibility of the city, due to the city allowing its employees to act with little discipline and oversight.

   **E. State Law Claims against Defendants, discussed in detail above, are not subject to immunity since Defendants clearly intended to do harm by lying to justify an arrest which is malicious and corrupt**

For state law claims, public officials are liable for negligent performance of ministerial duties and for actual malice or with intent to cause injury in their discretionary functions.

Under state law, a deputy has to be factually performing a discretionary act, not just performing a discretionary function in his/her job (as in federal qualified immunity analysis), in order to benefit from the higher standard of immunity. McLemore v. City Council of Augusta, 212 Ga. App. 862, 865, 443 S.E.2d 505, 508 (1994). In McLemore, this factual determination under state law as to what the deputy was actually doing at the time of his actions was left to a jury, not the Court. *Id*.

Plaintiff maintains that he was detained and physically assaulted by Defendant Tobin for no reason, so any detention of Plaintiff, an innocent person committing no crime, would be unlawful. It would also make the physical search, battering, and arrest of Plaintiff unlawful, as well as the prosecution. And it would

finally mean that Defendants fabricated Plaintiff putting his hands in his pockets, or other pretextual activity, in order to justify his unlawful actions.

That would mean that Defendants should not be immune under any immunity analysis, as Defendants were not carrying on the business of the state in their actions toward Plaintiff, but were acting on an unlawful personal frolic. If they were acting under the business of the state toward Plaintiff, he was acting in a ministerial function (similar to a routine patrol) since they were simply authorized to talk to him, as he had done nothing to be suspected of a crime.

Further, even if the Court finds official immunity to be at issue, Defendant was intending to cause harm to Plaintiff by fabricating cause and arresting, attacking, and prosecuting him, leaving a jury question under state law.

## CONCLUSION

Defendants ask for a blank check for public officials to fabricate cause to search, arrest, and prosecute innocent people. Under Defendants' analysis, as long as a law enforcement officer claims that a citizen made them nervous, they are entitled to immunity and allowed to batter and arrest any person who they decide to interact with, and then charge them with a crime for arresting their unlawful actions, with no accountability to the Court system or to the public at large due to an extremely expanded version of official and qualified immunity. Defendants'

interpretation, claiming that there is no disputed issue of material fact, would allow for any person, who happens to have a charge levied against them by a police officer, to be arrested, solely on the word of a police officer, with zero judicial recourse for an aggrieved citizen who maintains that an officer was lying and that they were unlawfully targeted.

Plaintiff has clearly maintained that Defendants had no cause to detain, arrest, or prosecute him. Either Defendant is maliciously lying, or Plaintiff is lying. Either way, that is a fact issue for a jury. For all of the above reasons, Plaintiff requests that Defendants' motion be denied.

This 21st day of July, 2017.

/S/JORDAN JOHNSON
JORDAN JOHNSON,
Georgia Bar No. 673643,
*Attorney for Plaintiff.*

LAW OFFICES OF JORDAN "ALEX" JOHNSON, LLC
*Two Ravinia Drive, Suite 650,*
*Atlanta, Georgia 30346*
*770-670-6206; fax 770-670-6206;* ajohnson@lawjaj.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rule 7.1 that the foregoing has been prepared in accordance with Local Rule 5.1 by being prepared in Times New Roman font, 14 point.

/S/JORDAN JOHNSON
JORDAN JOHNSON,
Georgia Bar No. 673643,
*Attorney for Plaintiff.*

LAW OFFICES OF JORDAN "ALEX" JOHNSON, LLC
*Two Ravinia Drive, Suite 650,*
*Atlanta, Georgia 30346*
*770-670-6206; fax 770-670-6206;* ajohnson@lawjaj.com