**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **KELCEY ROCKEMORE,** | |
| *Plaintiff,* | **CIVIL ACTION NO.** |
| **v.** | **5:16-cv-00325-TES** |
| **PHILLIP TOBIN (in both his individual and official capacity as Thomaston Police Officer, and CITY OF THOMASTON** | |
| *Defendants.* | |

**ORDER GRANTING IN PART AND RESERVING RULING ON
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Presently before the Court is Defendants' Motion for Summary Judgment and Amended Motion for Summary Judgment. [Docs. 19, 32].[1] For the following reasons, the Court **GRANTS IN PART** and **RESERVES RULING** on Defendants' motions.

### FACTUAL BACKGROUND

The following facts are undisputed. Sharanjit Kaur owns a Handy Mart convenience store in Thomaston, Georgia. [Doc. 19-2, ¶ 2]. On the night of June 1, 2014, Ms. Kaur was working at the Handy Mart when Plaintiff Kelcey Rockemore entered

---

[1] After Defendants filed their initial Motion for Summary Judgment [Doc. 19], the Court ordered further briefing regarding the implications of *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Younger v. Harris*, 401 U.S. 37 (1971), on this case. Defendants therefore filed an Amended Motion for Summary Judgment [Doc. 32], incorporating in full their initial motion and addressing these cases. The Court rules on both motions in this Order.

around 10:00 p.m. [*Id.* at ¶ 6]. Prior to that date, Ms. Kaur complained to local police that Plaintiff made threats to her and her mother, intimidated them, and loitered outside the store after closing time. [Doc. 23, pp. 48, 51-52, 54]. Plaintiff left the store and then returned after closing time, following behind another patron Ms. Kaur let in to pay for gas. [Doc. 19-2, ¶ 7]. Ms. Kaur asserts that she asked Plaintiff to leave the store several times before he finally left. [*Id.*]. Concerned that Plaintiff was waiting outside the store with a gun, Ms. Kaur called Defendant Philip Tobin, a Thomaston Police Department officer, to explain that she kicked Plaintiff out of the store. [*Id.* at ¶ 8; Doc. 23, p. 56].

Officer Tobin was familiar with Ms. Kaur and the Handy Mart after he previously assisted with the investigation into Ms. Kaur's father's death in 2012. [Doc. 23, pp. 54, 55]. After her father's death, Ms. Kaur began having problems with drug dealing and shoplifting at the Handy Mart. [Doc. 19-2, ¶ 4]. As a result, Officer Tobin gave Ms. Kaur his cell phone number to call if she had any problems at the store. [*Id.* at ¶ 4]. Ms. Kaur usually called Officer Tobin if problems arose. [*Id.*].

During his phone call with Ms. Kaur on June 1, 2014, Officer Tobin instructed Ms. Kaur to call 9-1-1 because he was not on duty. [*Id.* at ¶ 9; Doc. 23, p. 56]. Ms. Kaur called 9-1-1, and another officer arrived at the scene and escorted Ms. Kaur and one of her employees to their cars. [Doc. 19-2, ¶ 9; Doc. 23, p. 57]. At some point in the ten days after that incident, Ms. Kaur told Officer Tobin that she did not want Plaintiff to return to the store. [Doc. 19-2, ¶ 10; Doc. 23, pp. 57-58].

On June 11, 2014, Plaintiff returned to the Handy Mart to buy cigarettes and a drink. [Doc. 21, p. 68]. Officer Tobin drove past the Handy Mart and witnessed Plaintiff exit the store. [Doc. 22, pp. 59-60; Doc. 23, pp. 58, 59]. Officer Tobin then pulled into the Handy Mart and parked his car. [Doc. 21, p. 70; Doc. 23, p. 59]. Upon exiting his car, Officer Tobin called out to Plaintiff and walked toward him slowly. [Doc. 21, p. 70; Doc. 22, pp. 62, 64; Doc. 23, p. 60]. Officer Tobin and Plaintiff began talking, and Officer Tobin informed Plaintiff of Ms. Kaur's wish that Plaintiff no longer visit the Handy Mart. [Doc. 21, pp. 71-72; Doc. 22, pp. 64, 111-112; Doc. 23, pp. 60, 64]. Officer Tobin testified that he intended to present Plaintiff with a criminal trespass notice informing Plaintiff that "he no longer could go back in the store." [Doc. 23, pp. 59:25—60:11, 65].

Officer Tobin testified that throughout his conversation with Plaintiff, Plaintiff reached into his pockets on multiple occasions, and Officer Tobin instructed Plaintiff not to do so. [Doc. 23, pp. 62, 65-66]. Plaintiff, on the other hand, denies that he stopped to talk to Officer Tobin and instead maintains that Officer Tobin chased and grabbed him. [Doc. 26-1, ¶ 24]. Officer Tobin further testified that he decided to conduct a pat down on Plaintiff in light of his knowledge of Plaintiff's history with violence and weapons and because he did not know if Plaintiff had a weapon during the encounter. [Doc. 23., pp. 62, 66, 68, 70, 94-95]. To conduct the pat down, Officer Tobin told Plaintiff to walk toward a railing for support and guided him to that area with a hand on Plaintiff's back. [Doc. 22, pp. 70-71, 112; Doc. 23, p. 69].

Although a surveillance camera captured these and the following events, [Doc. 25], the parties disagree as to the details of what happened next. There appears to be a struggle, during which Officer Tobin claims Plaintiff resisted the pat down and attempted to turn away. [Doc. 19-7, ¶ 29; Doc. 25, 4:49—5:03]. Plaintiff, on the other hand, argues that he complied with Officer Tobin's instructions but Officer Tobin jerked him around and pulled him back "like a damn dog," resulting in what appears to be a refusal to comply. [Doc. 26-1, ¶ 29; Doc. 22, pp. 70-73, 77-83]. Officer Tobin further claims that he tried to spread Plaintiff's feet apart for the pat down, but Plaintiff kept moving around and refusing to put his hands on the rail. [Doc. 23, pp. 70-71, 73].

Plaintiff turned away from the railing, and Officer Tobin unholstered his Taser. [Doc. 22, pp. 73, 75; Doc. 25, 5:05-27]. Officer Tobin again attempted to conduct a pat down, but Plaintiff spun around, lifted his hand off the railing, and kicked his leg in the air. [Doc. 22, pp. 74, 76, 82-83, 85; Doc. 23, pp. 70, 72]. Plaintiff contends that Officer Tobin "pulled him back" and caused him to make these motions and that "his leg going in the air was a result of Officer Tobin's attack." [Doc. 26-1, ¶ 31; Doc. 22, pp. 70-73, 83-86].

Officer Tobin then took a step back and deployed his Taser, hitting Plaintiff in his right arm. [Doc. 22, pp. 83, 91; Doc. 23, pp. 72, 73]. Officer Tobin testified that he then turned the power off on the Taser. [Doc. 23, p. 74]. Plaintiff testified that Officer Tobin tased him continuously throughout the following events. [Doc. 22, pp. 98-102]. Plaintiff fell to the ground, and Officer Tobin cuffed Plaintiff's arms behind his back and

performed a "crunch roll" search of Plaintiff's pockets. [Doc. 22, p. 85; Doc. 23, p. 74].

Officer Tobin then called 9-1-1 to report that he tased Plaintiff and that he needed

emergency medical services. [Doc. 23, p. 74]. Officer Tobin was told that emergency

medical services were unavailable and could take an hour to arrive. [*Id.*]. He then called

his supervisor to ask him to come to the scene. [*Id.*].

Officer Tobin testified that a crowd began to gather during the arrest and that he

spoke to them and showed them that his taser was cut off. [*Id.* at p. 76]. Plaintiff maintains

that the taser was still on. [Doc. 22, p. 98-102]. Plaintiff began to roll around on the ground,

which he claims is because of continued tasing, and Officer Tobin jumped out of the way.

[*Id.* at pp. 103, 104, 116-17, 120; Doc. 23, p. 76]. Plaintiff then got up off the ground, ran to

a parked vehicle, and dove into the driver's open window. [Doc. 22, pp. 108, 117, 118;

Doc. 23, p. 76; Doc. 19-4, ¶ 19]. The vehicle's occupants pushed Plaintiff back out of the

vehicle. [Doc. 23, pp. 77, 78]. Once out of the vehicle, Plaintiff fell down, kicked his leg in

the air to sit up, leaned back on his elbows, laid down, then lifted his head and bent his

knees. [Doc. 22, pp. 109, 124, 125, 126; Doc. 23, p. 77].

After a few minutes, Officer Tobin helped Plaintiff off the ground and led him over

to a set of stairs to sit on. [Doc. 22, p. 136; Doc. 23, p. 80]. Officer Tobin kept the taser darts

in Plaintiff's arms because he was the only officer on the scene and because of Plaintiff's

violent behavior. [Doc. 19-4, ¶ 22].

Officer Tobin's supervisor eventually arrived at the scene, helped Plaintiff to his feet, and transported him to the Thomaston jail. [Doc. 22, p. 155; Doc. 23, pp. 83, 84]. A jail nurse examined Plaintiff, and he complained of two burn marks on his arm from the taser and abrasions from rolling on the ground. [Doc. 21, pp. 75-77; Doc. 22, pp. 156, 175; Doc. 23, p. 84]. The nurse applied alcohol to the abrasions and gave Plaintiff ibuprofen. [Doc. 21, pp. 75-77; Doc. 22, pp. 156, 175].

Two days after the incident, Officer Tobin obtained a warrant for Plaintiff's arrest. [Doc. 19-5]. Plaintiff was ultimately indicted in the Superior Court of Upson County, Georgia, on charges of obstruction and making a false statement. [*Id.*]. The charges are still pending, and the court placed Plaintiff's criminal case on the "dead docket" on February 27, 2017. [Doc. 32-2].

Plaintiff filed the instant lawsuit, alleging that Officer Tobin and the City of Thomaston ("the City") violated several of his constitutional rights and various state laws. Plaintiff asserts claims against Officer Tobin under 42 U.S.C. § 1983 for excessive force, false arrest, false imprisonment, and malicious prosecution; under 42 U.S.C. § 1985; under 42 U.S.C. § 1986; and under Georgia law for battery and intentional infliction of emotional distress. Plaintiff also brings claims against the City under Section 1983; Section 1985; Section 1986; and Georgia state law for negligent hiring, negligent retention, and negligent failure to train, and for battery and intentional infliction of emotional

distress under a respondeat superior theory.[2] Defendants move for summary judgment on each of these claims, and the Court finds as follows.

**DISCUSSION**

A.      **Standard of Review**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).

As to issues for which the non-movant would bear the burden of proof at trial, the movant may (1) simply point out an absence of evidence to support the non-moving party's case or (2) provide "affirmative evidence demonstrating that the [non-movant] will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene*

---

[2] Plaintiff's Complaint [Doc. 1-1] is a quintessential shotgun pleading in that it "commits the sin of not separating into a different count each cause of action or claim for relief" and contains "multiple claims against multiple defendants without specifying which defendants are responsible for which acts or omissions." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015). In a telephone conference with the Court, Plaintiff's counsel explained the claims he sought to assert against Defendants, and those claims are the ones discussed.

& *Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

### B.    Plaintiff's Section 1983 Claims Against Officer Tobin

Plaintiff asserted Section 1983 claims against Officer Tobin for false arrest, false imprisonment, excessive force, and malicious prosecution. In their initial Motion for Summary Judgment, Defendants addressed these claims on the merits. However, in their Amended Motion for Summary Judgment, Defendants also discussed, at the Court's request, the effects of *Humphrey v. Heck*, 512 U.S. 477 (1994), and *Younger v. Harris*, 401 U.S. 37 (1971).

Under *Heck*, if a plaintiff's Section 1983 claim concerns an "allegedly unconstitutional conviction or imprisonment, or [ ] other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," then that plaintiff must prove that the conviction or sentence has been reversed, expunged, or otherwise declared invalid. *Heck*, 512 U.S. at 486-87. This bar to a Section 1983 lawsuit applies "only when

there is a conviction or sentence that has not been invalidated." *Turner v. Broward Sheriff's Office*, 542 F. App'x 764, 765 (11th Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)).

*Younger*, on the other hand, requires a federal court to refrain from considering the merits of a Section 1983 case if the "federal proceeding will interfere with an *ongoing* state proceeding." *Ramey v. Georgia*, No. 4:10-CV-06 (CDL), 2010 WL 786806, at *5 (M.D. Ga. Mar. 5, 2010) (quoting *Newsome v. Broward Cty. Pub. Defs.*, 304 F. App'x 814, 816 (11th Cir. 2008)) (emphasis added). The rationale behind *Younger* abstention is that "a pending state prosecution will provide the accused with a sufficient chance to vindicate his federal constitutional rights." *Turner*, 542 F. App'x at 766 (citing *Hughes v. Attorney Gen. of Fla.*, 377 F.3d 1258, 1263 n.7 (11th Cir. 2004)). Thus, "[*Younger*] abstention is required when (1) the proceedings constitute an ongoing state judicial proceeding, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1274-75 (11th Cir. 2003)). Abstention is only required, however, if "the state criminal prosecution commenced before any proceedings of substance on the merits have taken place in federal court, or if the federal case is in an embryonic stage and no contested matter has been decided." *Id.* (quoting *For Your Eyes Alone, Inc. v. City of Columbus*, 281 F.3d 1209, 1217 (11th Cir. 2002) and citing *Redner v. Citrus Cty.*, 919 F.2d 646, 649 (11th Cir. 1990)).

On November 12, 2014, a grand jury indicted Plaintiff on one count of misdemeanor obstruction of an officer and two counts of making a false statement. [Doc. 19-5].[3] Plaintiff filed suit against Defendants in the Superior Court of Upson County on June 9, 2016. [Doc. 1-1]. The City then removed the case to this Court on July 7, 2016. [Doc. 1]. On February 27, 2017, the Upson County Superior Court placed Plaintiff's criminal case on its "dead docket," [Doc. 32-2], thereby postponing the case but preserving it for reinstatement at the pleasure of the state court. *Howard v. Warden*, 776 F.3d 772, 774-75 (11th Cir. 2015) (quoting *State v. Creel*, 454 S.E.2d 804, 805 (Ga. Ct. App. 1995)). Although a dead-docketed case is postponed indefinitely, the case is not dismissed nor is the prosecution terminated in the accused's favor. *Id.* at 775. More importantly for the Court's purposes, "state criminal proceedings may remain 'ongoing' within the meaning of <u>Younger</u> even when a case is placed on the dead docket in Georgia." *Roberts v. Buchanan*, No. 1:16-CV-4295- MHC, 2017 WL 5247943, at *3 n.4 (N.D. Ga. June 16, 2017) (citing *Parris v. Taft*, 630 F. App'x 895, 899 (11th Cir. 2015)).

In this case, the Upson County Superior Court agreed to dead-docket Plaintiff's criminal case due to this pending civil case and because "Philip Tobin works out-of-state and Robert Devane is actively serving in the U.S. Air Force, which hampers the State's

---

[3] The Court takes judicial notice of the indictment [Doc. 19-5] pursuant to Federal Rule of Evidence 201. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal citations and quotation marks omitted).

ability to currently prosecute this case." [Doc. 32-2 at 2]. From this language it is clear that Plaintiff's state-court criminal case remains ongoing pending the return of Robert Devane from active military service and this Court's disposal of this civil action. Accordingly, the *Younger* doctrine—and not the *Heck* doctrine—applies to those claims that meet the requirements of *Turner*, *supra*. The Court considers those claims and the *Turner* test in turn below.

### 1. *False arrest, false imprisonment, and unlawful* **Terry** *frisk*

Plaintiff first claims that Officer Tobin searched and seized him in violation of his Fourth Amendment rights because he lacked "probable cause or valid legal justification" for the pat-down search and Plaintiff's subsequent arrest and imprisonment. [Doc. 26, pp. 4-5]. As a preliminary matter, the Court considers Plaintiff's false arrest and false imprisonment claims as a single claim accompanied by an unlawful search claim for the allegedly unjustified *Terry* frisk. When a plaintiff brings separate claims for false arrest and false imprisonment, the claims are condensed into a single false arrest claim when the false imprisonment claim arises from "a detention on the basis of [the] false arrest." *Hill v. Macon Police Dep't.*, No. 5:10-CV-472 (CAR), 2013 WL 594200, at *6 (M.D. Ga. Feb. 15, 2013). In this case, Plaintiff claims that "Defendants' precipitating actions (i.e. approaching, detaining, and attacking Plaintiff) were unlawful," [Doc. 33, p. 2], and that Officer Tobin "escalated that illegal detention into an unnecessary physical confrontation, arrest, and prosecution violating Plaintiff's constitutional rights." [Doc. 26, p. 1]. Plaintiff

therefore appears to argue that the false imprisonment is a result of the alleged false arrest, and the Court accordingly "subsume[s]" Plaintiff's false imprisonment claim into his false arrest claim. *Hill*, 2013 WL 594200, at *6. The Court construes Plaintiff's claim based on the *Terry* frisk as one for an unlawful search unsupported by reasonable suspicion. *Id.*

Defendant argues that the Court must abstain from considering these claims due to the restrictions imposed by *Younger*. *Younger* abstention applies when (1) the state criminal proceedings are ongoing, (2) the state criminal proceedings implicate important state interests, and (3) there is an adequate opportunity in the state criminal proceedings to raise constitutional challenges. *See Turner*, 542 F. App'x at 766.

The Court has already determined that Plaintiff's criminal prosecution remains ongoing. "The relevant inquiry thus becomes whether the federal proceeding will interfere with an ongoing state proceeding." *Ramey*, 2010 WL 786806, at *5. Plaintiff's criminal charges include misdemeanor obstruction of an officer under Ga. Code Ann. § 16-10-24(a).[4] "An essential element of this offense is proof beyond a reasonable doubt that the obstruction occurred while the officer was in the lawful discharge of his official duties. A police officer is not discharging his lawful duty when he arrests an individual without probable cause." *Adams v. State*, 589 S.E.2d 269, 270 (Ga. Ct. App. 2003). Here, the Court

---

[4] "[A] person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." Ga. Code Ann. § 16-10-24(a).

must determine whether Officer Tobin had probable cause to arrest Plaintiff in order to rule on Plaintiff's false arrest claim. *See Ramey*, 2010 WL 786806, at *5 ("An essential element of both Fourth Amendment false arrest and malicious prosecution claims is probable cause, and the existence thereof creates an absolute bar to each of these claims."). Likewise, an officer acts unlawfully when he conducts a *Terry* frisk without justification, and the Court must determine whether Officer Tobin had such justification to rule on Plaintiff's unlawful search claim. *See United States v. Griffin*, 696 F.3d 1354 (11th Cir. 2012) ("Once an officer has stopped an individual, he may conduct a pat-down or frisk for weapons if he reasonably believes that his safety, or the safety of others, is threatened."). Thus, the Court's considerations of the merits of this action will interfere with the prosecution of Plaintiff's obstruction charge.

Similarly, this civil adjudication will interfere with Plaintiff's charges for making false statements under Ga. Code Ann. § 16-10-20.[5] The indictment explains that Plaintiff

> did knowingly and willfully make a false statement to Agent Robert Devane while being interviewed regarding a tasing incident with [Officer Tobin] . . . to wit: said accused did state to Agent Devane during said interview that [Officer Tobin] and said accused did not say anything to each other prior to [Officer Tobin] pushing him towards the rail of the Handy Mart Store, said statement being false.

[Doc. 19-5, p. 4].

---

[5] "A person who knowingly and willfully falsifies . . . a material fact; [or] makes a false, fictitious, or fraudulent statement or representation . . . shall, upon conviction thereof, be punished with a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both." Ga. Code Ann. § 16-10-20.

Plaintiff argues that Officer Tobin lacked the requisite reasonable suspicion to conduct the *Terry* frisk because Plaintiff was not putting his hands in his pockets during a conversation Officer Tobin claims they had prior to the frisk. Pretermitting whether Plaintiff had his hands in his pockets, the parties dispute whether Officer Tobin and Plaintiff had any conversation at all:

> Tobin called out to Rockemore. Rockemore saw Officer Tobin walking towards him slowly. Rockemore stopped as Officer Tobin approached. The two men stood in the parking lot talking.

[Doc. 19-7, *Defendants' Statement of Material Facts*, ¶ 24] (internal citations omitted).

> Partially denied. Plaintiff agrees that Defendant verbally spoke to him, but denies that the interaction was one where Rockemore "stopped." While the videotape shows much of the interaction, Plaintiff maintains that Defendant was "chasing" him and "grabbing" him, which would constitute a seizure and detention of Plaintiff.

[Doc. 26-1, *Plaintiff's Response to Defendants' Statement of Material Facts*, ¶ 24].

The Court's resolution of this issue of fact would unavoidably bear on Plaintiff's charge of making a false statement and whether Plaintiff misrepresented that there was a conversation between himself and Officer Tobin. Thus, the Court's determinations on this count will interfere with the prosecution of Plaintiff's criminal charges.

The second *Younger* inquiry is whether the state criminal proceedings implicate important state interests. Here, Plaintiff's criminal charges implicate Georgia's "interest in the enforcement of its criminal laws," *Juidice v. Vail*, 430 U.S. 327, 335 (1977), as well as its "separate function of providing a forum competent to vindicate any constitutional

objections" to its substantive policies. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). That is, the Georgia courts have an interest in prosecuting crimes and are capable of hearing and considering the constitutional objections to those crimes. Therefore, the second *Younger* factor is met.

Third, and finally, *Younger* abstention is required where Plaintiff has an adequate opportunity in the state criminal proceedings to raise constitutional challenges. Plaintiff can defend against his obstruction charge by presenting evidence that Officer Tobin falsely arrested him or that Officer Tobin lacked justification for the *Terry* stop. *See Long v. State*, 583 S.E.2d 158, 160 (Ga. Ct. App. 2003) ("If an arrest is unlawful . . . the defendant has the right to resist the unlawful arrest with all force reasonably necessary to prevent the arrest."). If Officer Tobin lacked justification for the *Terry* frisk, which Plaintiff is accused of obstructing, then Officer Tobin acted unlawfully in the discharge of his duties, and Plaintiff cannot be found guilty of obstructing that unlawful action. Accordingly, Plaintiff has sufficient opportunity to raise the defense of lack of probable cause and/or reasonable suspicion (which is the only constitutional challenge at issue for his false arrest and unlawful search claims) during his criminal proceedings. Thus, all three *Turner* factors are present, and the Court must refrain from considering Plaintiff's Fourth Amendment false arrest claim arising from the initial *Terry* frisk.

2. *Excessive force*

Plaintiff also claims that Officer Tobin used excessive force in violation of the Fourth Amendment by tasing Plaintiff "multiple times." [Doc. 26 at pp. 11-12]. Plaintiff further claims that Officer Tobin should not have used force at all during the frisk and arrest because Plaintiff was not resisting. As with Plaintiff's false arrest and unlawful search claims, the Court is required to abstain from considering Plaintiff's excessive force claim on the merits.

The Court has already determined that Plaintiff's state criminal proceedings are ongoing, and the same state interests that apply to Plaintiff's false arrest and unlawful search claims apply to this claim. Therefore, *Younger* abstention applies if the Court's consideration of this claim will interfere with the prosecution of Plaintiff's obstruction charge and if there is an adequate opportunity for Plaintiff to raise constitutional challenges in the criminal proceedings. *See Ramey*, 2010 WL 786806, at *5; *Turner*, 542 F. App'x at 766.

Plaintiff's allegation of excessive force, if true, constitutes a defense to Plaintiff's obstruction charge. *See Long*, 583 S.E.2d at 160 ("If an arrest is unlawful . . . the defendant has the right to resist the unlawful arrest with all force reasonably necessary to prevent the arrest. . . . And when an officer uses excessive force, a defendant has the right to resist to the extent reasonably necessary."); *see also Ramey*, 2010 WL 786806, at *6 ("Plaintiff can defend the allegations that he obstructed officers . . . by producing evidence . . . that

Defendant Martin used excessive force to effectuate his arrest."). Thus, the Court's determination of whether Officer Tobin used excessive force necessarily implicates Plaintiff's obstruction charge and his underlying right to resist Officer Tobin's use of force. Therefore, the Court abstains from considering this claim on the merits.

### 3. *Malicious prosecution*

Plaintiff's next claim is for malicious prosecution. A viable malicious prosecution claim requires the following Georgia common-law elements: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused," along with "a violation of his Fourth Amendment right to be free from unreasonable seizures." *Blue v. Lopez*, ____ F.3d ____, 2018 WL 4088457, at *4 (11th Cir. Aug. 28, 2018) (quoting *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008) and *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).

Although *Younger* abstention may apply to other federal malicious prosecution claims,[6] the Court need not apply *Younger* in this case because Plaintiff cannot prove that the underlying prosecution terminated in his favor. Plaintiff claims in his Complaint that "Defendants, knowing that Plaintiff had committed no crime, initiated and continued the

---

[6] For example, *Younger* may prevent a federal court from considering a malicious prosecution claim where there is a pending criminal charge and there are disputes as to probable cause or an unreasonable seizure.

prosecution of Plaintiff," and that "[t]he charges against Plaintiff were *or will be* ultimately terminated in Plaintiff's favor." [Doc. 1-1, ¶¶ 19, 20 (emphasis added)].

First, Plaintiff's criminal prosecution remains ongoing, and its dead-docket status does not render it terminated in Plaintiff's favor. *See Howard*, 776 F.3d 772, 774 ("Placing a case upon the dead docket certainly constitutes neither a dismissal nor a termination of the prosecution in the accused's favor."). Second, the fact that the underlying prosecution *may at some future point in time* terminate in Plaintiff's favor is not sufficient to establish a viable malicious prosecution claim. *See Laster v. Star Rental, Inc.*, 353 S.E.2d 37, 38 (Ga. Ct. App. 1987) ("It is essential to the maintenance of an action for malicious prosecution that the plaintiff shall prove that the prosecution not only terminated, but terminated in his favor."). Thus, Officer Tobin is entitled to summary judgment on Plaintiff's malicious prosecution claim.

## C.   <u>Plaintiff's Section 1983 Claims Against the City</u>

Plaintiff seeks to hold the City liable for having "a custom and practice . . . of failing to train and discipline law enforcement officers, specifically Defendant Tobin, on proper treatment of suspects or prisoners and their Constitutional rights." [Doc. 1-1, ¶ 37]. This "custom and practice" also allegedly included "an ongoing custom and policy of disrespect, physical and verbal abuse, and oppression toward citizens interacting with Defendant Tobin, directly leading to the abuse Plaintiff suffered in this case." [*Id.* at ¶ 38].

During a telephone conference with the Court, Plaintiff's counsel clarified that this claim is based on *Monell v. Department of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court established that a municipality can be held liable for the acts of its employees; however, that liability is not akin to respondeat superior. 436 U.S. at 691-95. "[T]he mere fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee is insufficient to infer municipal culpability and causation." *Martin v. Wood*, 648 F. App'x 911, 914 (11th Cir. 2016) (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). Rather, Plaintiff must show that (1) "his constitutional rights were violated"; (2) "the municipality had a custom or policy that constituted deliberate indifference to that constitutional right"; and (3) "the policy or custom caused the violation." *Id.* (quoting *McDowell*, 392 F.3d at 1289).

The Court need not consider this claim on its merits because, as with Plaintiff's Section 1983 claims against Officer Tobin, *Younger* abstention is required. The first step in the *Monell* analysis is the determination of whether Plaintiff suffered a constitutional violation. This requires the Court to consider and rule on the merits of Plaintiff's false arrest, unlawful detention, and excessive force claims, which the Court has already found to be premature under *Younger*. Accordingly, Plaintiff's *Monell* claim against the City must also be stayed pending the resolution of his criminal prosecution and his other federal Section 1983 claims.

### D. Plaintiff's Claims under 42 U.S.C. § 1985 and 1986

Plaintiff claims that Officer Tobin and the City's actions violated 42 U.S.C. §§ 1985 and 1986. Section 1985 establishes a cause of action for any person injured by a conspiracy entered into by "two or more persons . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). In addition to proving the elements contained in the statute, a Plaintiff bringing a Section 1985(3) claim must also prove that the conspiracy is "motivated by 'some racial, or otherwise class-based, invidiously discriminatory animus.'" *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 829 (11th Cir. 1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

Section 1986 provides a right of action against any "person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so." 42 U.S.C. § 1986. By the plain language of Section 1986, no claim can lie under that section without an underlying violation of Section 1985. *Higdon v. Tusan*, ___ F. App'x ___, 2018 WL 3868672, at *6 (11th Cir. Aug. 14, 2018) (citing *Farese v. Scherer*, 342 F.3d 1223, 1232 n.12 (11th Cir. 2003)).

Plaintiff's Section 1985 claim fails for two reasons. First, he cannot prove a conspiracy because Officer Tobin and the City are considered one entity for the purposes of liability for a conspiracy. Under this doctrine, referred to as the intracorporate

conspiracy doctrine, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010) (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc)). The intracorporate conspiracy doctrine "applies to public entities such as the City and its personnel." *Id.* (quoting *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001)). At the time of the events giving rise to this action, Officer Tobin was the City's employee, and Plaintiff asserts his Section 1985 against only these two defendants. Moreover, the subject of the alleged conspiracy relates to Officer Tobin's actions within the scope of his employment (i.e., the investigation of a potential crime and the resulting arrest).[7] Thus, the intracorporate conspiracy doctrine bars Plaintiff's Section 1985 claim.

Second, Plaintiff's Section 1985 claim fails because he has neither alleged nor proven any racial or class-based animus behind the alleged conspiracy. *See United Bhd.*, 463 U.S. at 829. Therefore, Plaintiff's Section 1985 claim fails as a matter of law, and his

---

[7] As the *Grider* court pointed out:

"[O]ne might reasonably believe that violating someone's constitutional rights is never a job-related function or within the scope of a police officer's employment. However, the question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally. The scope-of-employment inquiry is whether the employee police officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business."

*Grider,* 618 F.3d at 1261.

Section 1986 claim cannot survive in its absence. Defendants are entitled to summary judgment on these claims.

E.    **Plaintiff's State-law Claims**

Plaintiff also asserts state-law claims against Officer Tobin and the City for battery and intentional infliction of emotional distress and state-law claims against the City for negligent hiring, negligent retention, and negligent failure to train.

1.    *Sovereign immunity*

Plaintiff claims that the City is vicariously liable for Officer Tobin's alleged battery and intentional infliction of emotional distress; however, this claim is barred by sovereign immunity. In Georgia, sovereign immunity shields a municipality from suit unless the Georgia General Assembly waives the immunity. *Primas v. City of Milledgeville*, 769 S.E.2d 326, 328 (Ga. 2015). Furthermore, Ga. Code Ann. § 36-33-3 provides that a city "shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law." However, the Georgia General Assembly expressly waives this immunity if the city purchases liability insurance that covers torts committed by the city's police officers. Ga. Code Ann. § 36-33-1(a); *see also Reese v. City of Atlanta*, 583 S.E.2d 584, 585 (Ga. Ct. App. 2003); *Stefani v. City of Grovetown*, 2016 WL 4611575, at *10-11 (S.D. Ga. Sept. 2, 2016) ("The interaction between the governmental immunity granted by O.C.G.A. § 36-33-3 and the waiver of immunity in O.C.G.A. § 36-33-1(a) has been subject to surprisingly little litigation. . . . The Court concludes that the immunities granted by

§§ 36-33-1 and 36-33-3 are subject to the liability-insurance-waiver provision in § 36-33-1(a).").  Where such liability insurance exists, the city is only liable up to the limits of that policy. Ga. Code Ann. § 36-33-1(a).

Plaintiff does not allege in his Complaint or prove through any evidence in the record that the City purchased liability insurance or otherwise waived its immunity to suit. Thus, to the extent he seeks to hold the City vicariously liable for Officer Tobin's alleged torts, his state-law claims against the City are barred.

Similarly, Plaintiff's claims for negligent hiring, negligent retention, and negligent failure to train are barred by sovereign immunity. Cities in Georgia are entitled to sovereign immunity from suit for the "negligent performance or nonperformance of their governmental functions." *City of Atlanta v. Durham*, 751 S.E.2d 172, 174 (Ga. Ct. App. 2013) (citing Ga. Code Ann. §§ 36-33-1, 36-33-2). Governmental functions include activities "undertaken primarily for public benefit rather than for revenue production." *Id.* The City's operation of a police department, "including the hiring, firing, promotion, demotion and transfer of officers," is a governmental function. *Fry v. City of Atlanta*, 255 S.E.2d 48, 49 (Ga. 1979). Furthermore, "the degree of training and supervision to be provided to [a police department's] officers" is also "a discretionary governmental function." *Russell v. Barrett*, 673 S.E.2d 623, 629 (Ga. Ct. App. 2009) (quoting *Harvey v. Nichols*, 581 S.E.2d 272, 276-77 (Ga. Ct. App. 2003), disapproved of on other grounds by *City of Richmond Hill v. Maia*, 800 S.E.2d 573 (Ga. 2017)). Accordingly, the City is not liable

for the negligent operation of its police department or for any claim of negligent hiring, negligent retention, or negligent failure to train within its police department.

**2.** *Plaintiff's other state-law claims*

The only remaining state-law claims are against Officer Tobin for battery and intentional infliction of emotional distress. Given the Court's decision to stay Plaintiff's pending Section 1983 claims for false arrest, unlawful search, and excessive force, and given the impact the Court's decisions on those claims will have on Plaintiff's remaining state law claims, the Court hereby **RESERVES RULING** on these claims pending the reinstatement of this action.

<u>CONCLUSION</u>

Based on the foregoing, the Court **GRANTS IN PART** Defendants' Motion for Summary Judgment [Doc. 19] and Amended Motion for Summary Judgment [Doc. 32]. Plaintiff's federal claims for malicious prosecution under Section 1983, conspiracy under Section 1985, and failure to prevent under Section 1986 are **DISMISSED**. Plaintiff's state-law claims against the City are also **DISMISSED**.

The Court **RESERVES RULING** on Plaintiff's Section 1983 claims against Officer Tobin for false arrest, unlawful search, and excessive force; Plaintiff's Section 1983 *Monell* liability claims against the City; and Plaintiff's state-law claims against Officer Tobin for battery and intentional infliction of emotional distress. These claims are hereby **STAYED**

pending the completion of Plaintiff's state court criminal proceedings.[8] The Clerk is **DIRECTED** to administratively close this action. Plaintiff may file a motion to reopen this action within 30 days after the conclusion of his state criminal proceeding.

      **SO ORDERED**, this 30th day of August, 2018.

<u>S/ Tilman E. Self, III</u>
**TILMAN E. SELF, III, Judge**
**UNITED STATES DISTRICT COURT**

---

[8] *See Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) ("[T]he District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding."); *see also Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.").