# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **KELCEY ROCKEMORE,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:16-cv-00325-TES** |
| **PHILLIP TOBIN, in both his individual and official capacity as Thomaston Police Officer; and CITY OF THOMASTON,** | |
| *Defendants.* | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Court previously granted Defendants' Motion for Summary Judgment in part and reserved ruling on the remainder pending the resolution of Plaintiff's underlying criminal case. *See generally* [Doc. 34]. On April 19, 2019, Plaintiff informed the Court that his criminal case was disposed of via nolle prosequi and moved to reopen the case. [Doc. 35]. The Court granted Plaintiff's motion, and the remaining portions of Defendant's Motion for Summary Judgment are now ripe for review. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment [Doc. 19].

## FACTUAL BACKGROUND

The following facts are undisputed. Sharanjit Kaur owns a Handy Mart convenience store in Thomaston, Georgia. [Doc. 19-2, ¶ 2]. On the night of June 1, 2014, Ms. Kaur was working at the Handy Mart when Plaintiff Kelcey Rockemore entered around 10:00 p.m. [*Id.* at ¶ 6]. Prior to that date, Ms. Kaur complained to local police that Plaintiff made threats to her and her mother, intimidated them, and loitered outside the store after closing time. [Doc. 23, pp. 48, 51–52, 54]. Plaintiff left the store and then returned after closing time, following behind another patron Ms. Kaur let in to pay for gas. [Doc. 19-2, ¶ 7]. Ms. Kaur asserts that she asked Plaintiff to leave the store several times before he finally left. [*Id.*]. Concerned that Plaintiff was waiting outside the store with a gun, Ms. Kaur called Defendant Philip Tobin, a Thomaston Police Department officer, to explain that she kicked Plaintiff out of the store. [*Id.* at ¶ 8]; [Doc. 23, p. 56].

Officer Tobin was familiar with Ms. Kaur and the Handy Mart after he previously assisted with the investigation into Ms. Kaur's father's death in 2012. [Doc. 23, pp. 54, 55]. After her father's death, Ms. Kaur began having problems with drug dealing and shoplifting at the Handy Mart. [Doc. 19-2, ¶ 4]. As a result, Officer Tobin gave Ms. Kaur his cell phone number to call if she had any problems at the store. [*Id.* at ¶ 4]. Ms. Kaur usually called Officer Tobin if problems arose. [*Id.*].

During his phone call with Ms. Kaur on June 1, 2014, Officer Tobin instructed Ms. Kaur to call 9-1-1 because he was not on duty. [*Id.* at ¶ 9]; [Doc. 23, p. 56]. Ms. Kaur called

9-1-1, and another officer arrived at the scene and escorted Ms. Kaur and one of her employees to their cars. [Doc. 19-2, ¶ 9]; [Doc. 23, p. 57]. At some point in the ten days after that incident, Ms. Kaur told Officer Tobin that she did not want Plaintiff to return to the store. [Doc. 19-2, ¶ 10]; [Doc. 23, pp. 57–58].

On June 11, 2014, Plaintiff returned to the Handy Mart to buy cigarettes and a drink. [Doc. 21, p. 68].[1] Officer Tobin drove past the Handy Mart and witnessed Plaintiff exit the store. [Doc. 22, pp. 59–60]; [Doc. 23, pp. 58, 59]. Officer Tobin then pulled into the Handy Mart and parked his car. [Doc. 21, p. 70]; [Doc. 23, p. 59]. Upon exiting his car, Officer Tobin called out to Plaintiff and walked toward him slowly. [Doc. 21, p. 70]; [Doc. 22, pp. 62, 64]; [Doc. 23, p. 60]. Officer Tobin and Plaintiff began talking, and Officer Tobin informed Plaintiff of Ms. Kaur's wish that Plaintiff no longer visit the Handy Mart. [Doc. 21, pp. 71–72]; [Doc. 22, pp. 64, 111–12]; [Doc. 23, pp. 60, 64]. Officer Tobin testified that he intended to present Plaintiff with a criminal trespass notice informing Plaintiff that "he no longer could go back in the store." [Doc. 23, pp. 59:25—60:11, 65].

Officer Tobin testified that throughout his conversation with Plaintiff, Plaintiff reached into his pockets on multiple occasions, and Officer Tobin instructed Plaintiff not to do so. [Doc. 23, pp. 62, 65–66]. Plaintiff, on the other hand, denies that he stopped to

---

[1] The events of June 11, 2014 are captured on video surveillance footage, which has been entered into evidence. *See* [Doc. 25]. To the extent "the video obviously contradicts Plaintiff's version of the facts, [the Court] accept[s] the video's depiction instead of Plaintiff's account." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

talk to Officer Tobin and instead maintains that Officer Tobin chased and grabbed him. [Doc. 26-1, ¶ 24]. Officer Tobin further testified that he decided to conduct a pat down on Plaintiff in light of his knowledge of Plaintiff's history with violence and weapons and because he did not know if Plaintiff had a weapon during the encounter. [Doc. 23, pp. 62, 66, 68, 70, 94–95]. To conduct the pat down, Officer Tobin told Plaintiff to walk toward a railing for support and guided him to that area with a hand on Plaintiff's back. [Doc. 22, pp. 70–71, 112]; [Doc. 23, p. 69].

Although a surveillance camera captured these and the following events, [Doc. 25], the parties disagree as to the details of what happened next. There appears to be a struggle, during which Officer Tobin claims Plaintiff resisted the pat down and attempted to turn away. [Doc. 19-7, ¶ 29]; [Doc. 25, 13:54:58 — 13:55:12].[2] Plaintiff, on the other hand, argues that he complied with Officer Tobin's instructions but Officer Tobin jerked him around and pulled him back "like a damn dog," resulting in what appears to be a refusal to comply. [Doc. 26-1, ¶ 29]; [Doc. 22, pp. 70–73, 77–83]. Officer Tobin further claims that he tried to spread Plaintiff's feet apart for the pat down, but Plaintiff kept moving around and refusing to put his hands on the rail. [Doc. 23, pp. 70–71, 73].

Plaintiff turned away from the railing, and Officer Tobin unholstered his Taser. [Doc. 22, pp. 73, 75]; [Doc. 25, 13:55:14–36]. Officer Tobin again attempted to conduct a pat down, but Plaintiff spun around, lifted his hand off the railing, and kicked his leg in

---

[2] Record cites to the video evidence located at [Doc. 25] refer to the video timestamp.

the air. [Doc. 22, pp. 74, 76, 82–83, 85]; [Doc. 23, pp. 70, 72]. Plaintiff contends that Officer Tobin "pulled him back" and caused him to make these motions and that "his leg going in the air was a result of Officer Tobin's attack." [Doc. 26-1, ¶ 31]; [Doc. 22, pp. 70–73, 83–86].

Officer Tobin then took a step back and deployed his Taser, hitting Plaintiff in his right arm. [Doc. 22, pp. 83, 91]; [Doc. 23, pp. 72, 73]. Officer Tobin testified that he then turned the power off on the Taser. [Doc. 23, p. 74]. Plaintiff testified that Officer Tobin tased him continuously throughout the following events. [Doc. 22, pp. 98–102]. Plaintiff fell to the ground, and Officer Tobin cuffed Plaintiff's arms behind his back and performed a "crunch roll" search of Plaintiff's pockets. [Doc. 22, p. 85]; [Doc. 23, p. 74]. Officer Tobin then called 9-1-1 to report that he tased Plaintiff and that he needed emergency medical services. [Doc. 23, p. 74]. Officer Tobin was told that emergency medical services were unavailable and could take an hour to arrive. [*Id.*]. He then called his supervisor to ask him to come to the scene. [*Id.*].

Officer Tobin testified that a crowd began to gather during the arrest and that he spoke to them and showed them that his Taser was cut off. [*Id.* at p. 76]. Plaintiff maintains that the Taser was still on. [Doc. 22, p. 98–102]. Plaintiff began to roll around on the ground, which he claims is because of continued tasing, and Officer Tobin jumped out of the way. [*Id.* at pp. 103, 104, 116–17, 120]; [Doc. 23, p. 76]. Plaintiff then got up off the ground, ran to a parked vehicle, and dove into the driver's open window. [Doc. 22,

pp. 108, 117, 118]; [Doc. 23, p. 76]; [Doc. 19-4, ¶ 19]. The vehicle's occupants pushed Plaintiff back out of the vehicle. [Doc. 23, pp. 77, 78]. Once out of the vehicle, Plaintiff fell down, kicked his leg in the air to sit up, leaned back on his elbows, laid down, then lifted his head and bent his knees. [Doc. 22, pp. 109, 124, 125, 126]; [Doc. 23, p. 77].

After a few minutes, Officer Tobin helped Plaintiff off the ground and led him over to a set of stairs to sit on. [Doc. 22, p. 136]; [Doc. 23, p. 80]. Officer Tobin kept the Taser darts in Plaintiff's arms because he was the only officer on the scene and because of Plaintiff's violent behavior. [Doc. 19-4, ¶ 22].

Officer Tobin's supervisor eventually arrived at the scene, helped Plaintiff to his feet, and transported him to the Thomaston jail. [Doc. 22, p. 155]; [Doc. 23, pp. 83, 84]. A jail nurse examined Plaintiff, and he complained of two burn marks on his arm from the Taser and abrasions from rolling on the ground. [Doc. 21, pp. 75–77]; [Doc. 22, pp. 156, 175]; [Doc. 23, p. 84]. The nurse applied alcohol to the abrasions and gave Plaintiff ibuprofen. [Doc. 21, pp. 75–77]; [Doc. 22, pp. 156, 175].

Two days after the incident, Officer Tobin obtained a warrant for Plaintiff's arrest. [Doc. 19-5]. Plaintiff was ultimately indicted in the Superior Court of Upson County, Georgia, on charges of obstruction and making a false statement. [*Id.*]. The superior court initially placed Plaintiff's criminal case on the "dead docket," but ultimately dismissed the charges via nolle prosequi. [Doc. 32-2]; [Doc. 35-1].

In his Complaint, Plaintiff alleges that Officer Tobin and the City of Thomaston ("the City") violated several of his constitutional rights and various state laws. Plaintiff asserts claims against Officer Tobin for unlawful detention, unlawful search, excessive force, false arrest, false imprisonment, and malicious prosecution under 42 U.S.C. § 1983; conspiracy under 42 U.S.C. § 1985; failure to prevent a conspiracy under 42 U.S.C. § 1986; and battery and intentional infliction of emotional distress under Georgia law. Plaintiff also asserts claims against the City under Section 1983; Section 1985; Section 1986; and Georgia state law for negligent hiring, negligent retention, and negligent failure to train, and for battery and intentional infliction of emotional distress under a respondeat superior theory.[3] The Court previously granted summary judgment to Defendants on Plaintiff's malicious prosecution, Section 1985, and Section 1986 claims, and granted summary judgment to the City on Plaintiff's state-law claims. *See* [Doc. 34, p. 24]. All that remains are Plaintiff's Section 1983 claims against Officer Tobin for unlawful detention, unlawful search, false arrest, and excessive force; Plaintiff's Section 1983 *Monell* liability claims against the City; and Plaintiff's state-law claims for battery and intentional infliction of emotional distress against Officer Tobin. *See* [*id.*]. The Court finds as follows.

---

[3] Plaintiff's Complaint [Doc. 1-1] is a quintessential shotgun pleading in that it "commits the sin of not separating into a different count each cause of action or claim for relief" and contains "multiple claims against multiple defendants without specifying which defendants are responsible for which acts or omissions." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). In a telephone conference with the Court, Plaintiff's counsel explained the claims he sought to assert against Defendants, and those claims are the ones discussed.

## DISCUSSION

### A.     Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).

As to issues for which the non-movant would bear the burden of proof at trial, the movant may (1) simply point out an absence of evidence to support the non-moving party's case or (2) provide "affirmative evidence demonstrating that the [non-movant] will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing

*Fitzpatrick*, 2 F.3d at 1115–17). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

### B.        Plaintiff's Section 1983 Claims Against Officer Tobin

Plaintiff's remaining Section 1983 claims against Officer Tobin are for unlawful detention, unlawful search (frisk), false arrest,[4] and excessive force. Officer Tobin argues that he is entitled to qualified immunity on each of these claims. An officer is entitled to qualified immunity when he acts within his discretionary authority and the conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Manners v. Cannella*, 891 F.3d 959, 967–68 (11th Cir. 2018) (quoting *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015)).

The burden first lies with the defendant to show that he acted "within his discretionary authority when the alleged wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  Once this is shown, the burden shifts to the plaintiff to prove that qualified immunity is inappropriate.  *Id.* The plaintiff satisfies this burden if the facts, taken in the light most favorable to him, show that the officer's conduct violated a clearly established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). To be clearly

---

[4] The Court previously merged Plaintiff's false arrest and false imprisonment claims because "[w]hen a plaintiff brings separate claims for false arrest and false imprisonment, the claims are condensed into a single false arrest claim when the false imprisonment arises from a 'detention on the basis of [the] false arrest.'" [Doc. 34, p. 11] (quoting *Hill v. Macon Police Dep't*, No. 5:10-CV-472 (CAR), 2013 WL 594200, at *6 (M.D. Ga. Feb. 15, 2013)).

established, the constitutional violation must be "apparent" when viewed "in light of pre-existing law" from the United States Supreme Court, Eleventh Circuit Court of Appeals, or Georgia Supreme Court, such that the offending officer has "fair warning that his conduct deprived his victim of a constitutional right." *Hope v. Pelzer*, 536 U.S. 730, 739–40 (2002).

Plaintiff does not dispute that Officer Tobin was exercising his discretionary authority when he detained, frisked, tased, and arrested Plaintiff. Thus, the burden lies with Plaintiff to show that Officer Tobin violated his clearly established constitutional rights during those events. The Court considers each claim below.

### 1. Unlawful Detention

Plaintiff first claims that Officer Tobin lacked legal justification for stopping him as he was walking away from the Handy Mart. An officer is entitled to "stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity, even though probable cause is lacking." *United States v. White*, 593 F.3d 1199, 1202 (11th Cir. 2010) (quoting *United States v. Williams*, 876 F.2d 1521, 1523 (11th Cir. 1989)). To have the requisite reasonable suspicion, the officer must "reasonably suspect[] that the person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). Ordinarily, a court determines the existence of reasonable suspicion "from the totality of the circumstances, and from the collective knowledge of all the officers involved in the stop." *Id.* (quoting *Williams*, 876 F.2d at 1524).

But when an officer asserts a qualified immunity defense to a *Terry* claim, "the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000). Under this standard, an officer who "reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity." *Id.* at 1165–66.

As a preliminary matter, the Court is not convinced that the initial encounter between Officer Tobin and Plaintiff was a *Terry* stop. Police encounters with citizens occur in three tiers. At tier one, where the encounter is consensual and involves "no coercion or detention," the Fourth Amendment is not implicated. *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989); *see also United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006). An encounter is consensual "if a reasonable person would feel free to terminate [it]." *United States v. Ramirez*, 476 F.3d 1231, 1238 (11th Cir. 2007) (quoting *United States v. Drayton*, 536 U.S. 194, 201 (2002)).

Tier two consists of *Terry* stops (i.e., where "a reasonable person would . . . believe[] that he or she [is] not free to leave"), which require the officer to have reasonable suspicion of criminal activity. *Hastamorir*, 881 F.2d at 1556. A tier one encounter becomes a tier two encounter "only when, by means of physical force or a show of authority, a person's freedom of movement is restrained." *Perez*, 443 F.3d at 778 (quoting *Craig v.*

*Singletary*, 127 F.3d 1030, 1041 (11th Cir. 1997)). Finally, tier three consists of full-blown arrests, which require probable cause. *Hastamorir*, 881 F.2d at 1556.

"There is no bright-line 'litmus test' for whether a . . . stop is a seizure or is a consensual encounter." *Ramirez*, 476 F.3d at 1240 (quoting *United States v. White*, 81 F.3d 775, 779 (8th Cir. 1996)).

> Factors relevant to this inquiry include, among other things: 'whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.'

*Perez*, 443 F.3d at 778 (quoting *United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991)). When determining whether an encounter is consensual or investigatory, the Court applies these factors objectively and "presupposes an *innocent* person." *Ramirez*, 476 F.3d at 1238 (emphasis in original) (quoting *Drayton*, 536 U.S. at 201).

The video evidence in this case shows Officer Tobin's police car pulling into the Handy Mart parking lot while Plaintiff is getting a drink from a vending machine outside the building. [Doc. 25 at 13:53:53]. As Plaintiff begins to walk away from the Handy Mart toward the street, Officer Tobin exits his vehicle and gets Plaintiff's attention. [*Id.* at 13:54:09]. Plaintiff and Officer Tobin speak for a few seconds, during which time Officer Tobin is neither touching Plaintiff nor blocking his path. [*Id.* at 13:54:15–38]. At one point, Plaintiff begins to walk away but stops (on his own volition) and continues talking to Officer Tobin. [*Id.* at 13:54:38–42]. Then, less than 40 seconds after Plaintiff and Officer

Tobin first make contact, Officer Tobin reaches out and grabs Plaintiff's shoulder and begins leading him toward a railing to conduct a frisk. [*Id.* at 13:54:46].

Applying the *Perez* factors above, it is clear that a reasonable person in Plaintiff's shoes would have felt free to leave during the verbal encounter between Plaintiff and Officer Tobin.[5] But when Officer Tobin placed his hand on Plaintiff's shoulder and began leading him toward a railing to conduct a frisk, he exercised the physical force and show of authority necessary to elevate the encounter from tier one to tier two. Thus, in order for Officer Tobin to benefit from qualified immunity, a reasonable officer in Officer Tobin's position would have needed to conclude that Plaintiff had committed or was committing a crime at the time Officer Tobin made physical contact with Plaintiff.

In his brief, Officer Tobin argues that he had not only reasonable suspicion sufficient to detain Plaintiff but also probable cause to arrest Plaintiff for being inside the Handy Mart. He contends that the objective facts within his knowledge would have led a reasonable officer to believe that Plaintiff had already committed criminal trespass at the time of the encounter. In Georgia, criminal trespass is defined as "knowingly and without authority . . . enter[ing] upon the land or premises of another person . . . after receiving, prior to such entry, notice from the owner [or] rightful occupant . . . that such

---

[5] Indeed, Officer Tobin testified that Plaintiff was free to leave while they were talking.

> Q:    Was [Plaintiff] free to go when you first started interacting with him?
> A:    Sure. He could have walked off.

[Doc. 23, p. 63:1–3].

entry is forbidden"; or remaining on the premises after being told by the owner or occupant to depart. O.C.G.A. § 16-7-21(b)(2), (3). Although there is evidence in the record that the Handy Mart owner told Plaintiff before the June 11 incident that she did not want him to return to the store, there is no evidence that Officer Tobin knew Plaintiff received such notice.[6] On the contrary, the objective facts within *Officer Tobin's*—not Plaintiff's—knowledge, which form the basis of reasonable suspicion, establish that Plaintiff did *not* have notice that he was barred from the Handy Mart. Officer Tobin testified that, after the Handy Mart owner filed a complaint with the police department, he advised her that nothing could be done to stop Plaintiff from returning to the store until Plaintiff received official notice from an officer. *See* [Doc. 23, pp. 53:17–23, 57:5—58:12]. The record evidence establishes that Officer Tobin knew that Plaintiff was not committing criminal trespass at the time of the stop because he subjectively believed that Plaintiff did not have notice that he was not allowed on the premises.[7] It is only logical that an officer who actually knows

---

[6] Officer Tobin's argument that he "had been told by the owner of the Handy Mart that she had told Plaintiff not to return to the store" is unsupported by the cited evidence. [Doc. 27, p. 3]. Although Ms. Kaur's declaration states that she told Plaintiff not to return to the store, it does not indicate that she told Officer Tobin that she directed Plaintiff not to return. *See* [Doc. 19-2, ¶¶ 5, 7, 8]. Moreover, the cited portion of Officer Tobin's deposition does not establish that he knew Ms. Kaur had already banned Plaintiff from returning to the store. *See* [Doc. 23, pp. 56–58].

[7] Whether Officer Tobin thought Plaintiff did not have notice is relevant, because it goes to the hypothetical reasonable officer's objective understanding of the circumstances. Thus, if Officer Tobin knew that Plaintiff did not have notice that he was barred from entering the Handy Mart, the arguable reasonable suspicion comparator (i.e., a reasonable officer "possessing the same knowledge as" Officer Tobin) would also have known that Plaintiff did not have notice. *Skop v. City of Atlanta*, 485 F.3d 1130, 1141 n.3 (11th Cir. 2007); *Young v. Eslinger*, 224 F. App'x 278, 279 (11th Cir. 2007). And where an officer believes that an individual has not been given such notice, the officer cannot reasonably believe that the individual has trespassed in violation of O.C.G.A. § 16-7-21(b).

that an individual is *not* trespassing cannot also reasonably suspect that the individual *is* trespassing. Therefore, Plaintiff's existence at the Handy Mart cannot, by itself, form the basis of an investigatory stop.

In the absence of some other criminal basis for detaining Plaintiff, there remains a question of fact as to whether he had reasonable suspicion to detain Plaintiff, the Court cannot grant qualified immunity to Officer Tobin. Officer Tobin's motion for summary judgment on this claim is therefore **DENIED**.

2.    Unlawful Search (Frisk)

It has been clearly established by the United States Supreme Court that "[s]o long as [an] officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous," the officer may frisk the suspect to determine if he has weapons. *Adams v. Williams*, 407 U.S. 143, 146 (1972). Such a frisk is warranted only "if [the officer] has reason to believe that his own safety or the safety of others is at risk," *United States v. White*, 593 F.3d 1199, 1202 (11th Cir. 2010). "[T]o proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Johnson*, 555 U.S. at 326–27.

The Court previously determined that there is a question of fact as to whether Officer Tobin had arguable reasonable suspicion sufficient to justify conducting an investigatory stop. Because a jury could find that the investigatory stop in this case was unlawful, it follows that the frisk—which must have been preceded by a lawful stop—

could have also been unlawful.[8] Accordingly, the Court **DENIES** Officer Tobin's motion for summary judgment on this claim.

### 3. False Arrest

The question of fact regarding reasonable suspicion also precludes the Court from granting summary judgment to Officer Tobin on Plaintiff's false arrest claim. Under Georgia law, a suspect is entitled to resist an unlawful detention, and such resistance does not constitute obstruction.[9] Thus, if Officer Tobin's detention of Plaintiff was unlawful, Plaintiff had the right to resist the detention without committing obstruction and being arrested therefor. Because the Court cannot determine at this time whether Officer

---

[8] Officer Tobin argues that he frisked Plaintiff because he repeatedly placed his hands in his pockets during the tier one encounter and because he knew of Plaintiff's prior involvement in a shooting. Plaintiff claims that he did not have his hands in his pockets during his conversation with Officer Tobin, and this is not clearly contradicted by the video evidence. *See Pourmoghani-Esfahani*, 625 F.3d at 1315. Although this creates a fact question as to whether Plaintiff did or did not place his hands in his pockets, it is likely that Officer Tobin's knowledge of Plaintiff's prior involvement in a shooting was sufficient on its own to warrant a frisk. *Cf. United States v. Ray*, 145 F. App'x 642, 646 (11th Cir. 2005) (an officer's knowledge of a suspect's prior criminal activity, among other things, justifies conducting a frisk); *see also United States v. Johnson*, 921 F.3d 991, 998 (11th Cir. 2019) (When determining whether an officer had reason to frisk a subject, "the totality of the circumstances—the whole picture—must be taken into account."). Nevertheless, the Court need not answer that question at this time, because if Officer Tobin did not have grounds to stop Plaintiff, he also had no grounds to conduct a frisk, regardless of his fear for his or others' safety. *See Terry*, 392 U.S. at 32–33 (Harlan, J., concurring) ("Any person, including a policeman, is at liberty to avoid a person he considers dangerous. If and when a policeman has a right instead to disarm such a person for his own protection, he must first have a right not to avoid him but to be in his presence. . . . [T]he right to frisk . . . depends upon the reasonableness of a forcible stop to investigate a suspected crime.").

[9] The Georgia obstruction statute makes hindering a law enforcement officer a crime only if the officer is engaged in "the *lawful* discharge of his or her official duties." O.C.G.A. § 16-10-24(a) (emphasis added). "[U]nder Georgia case law dealing with the offense of obstruction, the standard for determining whether an officer was lawfully discharging his duties . . . is whether a reasonable suspicion existed to stop the individual charged with obstruction." *Gainor v. Douglas Cty.*, 59 F. Supp. 2d 1259, 1282 (N.D. Ga. 1998) (citing Georgia case law).

Tobin's stop was lawful, it cannot determine whether Plaintiff was arrested for a crime he did not commit.[10] Officer Tobin's motion for summary judgment on Plaintiff's false arrest claim is **DENIED**.

4.    Excessive force

Despite the question of fact regarding reasonable suspicion, the Court must grant summary judgment to Officer Tobin on Plaintiff's excessive force claim. Plaintiff essentially argues that because Officer Tobin (arguably) lacked reasonable suspicion to justify a *Terry* stop, any force he used in subduing and subsequently arresting Plaintiff was excessive. In the Eleventh Circuit, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Bashir v. Rockdale Cty.*, 445 F.3d 1323, 1331 (11th Cir. 2006) (quoting *Jackson*, 206 F.3d at 1171). Logically, an officer who is not authorized to make a stop is also not authorized to use force to effectuate such a stop. *Id.* at 1332. Even so, the level of force used to make the stop remains relevant to an unlawful detention claim, because Plaintiff can recover for damages suffered from the use of force. *Id.* (quoting *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir. 2000)). It would be inappropriate for the Court to allow a

---

[10] The Court also cannot resolve this claim on summary judgment because the video evidence does not clearly contradict Plaintiff's assertions that Officer Tobin was "manipulating" him during the frisk, thereby causing it to appear that Plaintiff was resisting when he was not. *See Pourmoghani-Esfahani*, 625 F.3d at 1315. In the video, Officer Tobin can be seen grabbing and possibly pulling on Plaintiff's shirt while attempting the frisk. [Doc. 25, 13:55:11–32]. If a jury were to find that Plaintiff was not resisting of his own volition, Officer Tobin would have lacked probable cause to arrest Plaintiff for obstruction. *See Perkins v. Thrasher*, 701 F. App'x 887, 890 (11th Cir. 2017).

discrete claim for excessive force to proceed on Plaintiff's asserted basis of recovery. Accordingly, Officer Tobin is entitled to summary judgment on this claim. *Cf. id.* at 1333 (affirming district court's grant of summary judgment on an identical claim).

C.    **Plaintiff's Section 1983 Claims Against the City**

Plaintiff seeks to hold the City liable for having "a custom and practice . . . of failing to train and discipline law enforcement officers, specifically Defendant Tobin, on proper treatment of suspects or prisoners and their Constitutional rights." [Doc. 1-1, ¶ 37]. This "custom and practice" also allegedly included "an ongoing custom and policy of disrespect, physical and verbal abuse, and oppression toward citizens interacting with Defendant Tobin, directly leading to the abuse Plaintiff suffered in this case." [*Id.* at ¶ 38]. In his brief in response to Defendants' motion for summary judgment, Plaintiff argues that his claim is supported by the City's decision to substantiate none of the complaints in the three-inch-tall stack it had for Officer Tobin.

This claim is based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in which the Supreme Court established that a municipality can be held liable for the acts of its employees; however, that liability is not akin to respondeat superior. 436 U.S. at 691–95. "[T]he mere fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee is insufficient to infer municipal culpability and causation." *Martin v. Wood*, 648 F. App'x 911, 914 (11th Cir. 2016) (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). Rather, Plaintiff must show that (1) "his

constitutional rights were violated"; (2) "the municipality had a custom or policy that constituted deliberate indifference to that constitutional right"; and (3) "the policy or custom caused the violation." *Id.* (quoting *McDowell*, 392 F.3d at 1289).

Where a plaintiff bases a *Monell* custom or policy on a municipality's failure to investigate or respond reasonably to prior complaints of misconduct, he must show that the complaints regarded constitutional deprivations similar to the one he alleges he suffered. *See Gold v. City of Miami*, 151 F.3d 1346, 1353 (11th Cir. 1998) ("[B]ecause Gold presented no evidence of a prior arrest for disorderly conduct or even a valid complaint of such false arrest, there is now showing that the City's procedures for handling false arrest complaints" caused the alleged deprivation.); *see also Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). He must also "present at least some evidence from which a reasonable jury could infer that the complaints were meritorious." *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (quoting *Ayton v. Orange Cty. Sheriff Dep't*, No. 6:10-cv-1930-Orl-28GJK, 2012 WL 4711911, at *3 (M.D. Fla. Oct. 3, 2012)).

Plaintiff has done neither of these things in this case. There is no evidence that the complaints lodged against Officer Tobin—or any other Thomaston police officer, for that matter—related to unlawful detentions or the use of a Taser. Plaintiff also makes no attempt to argue that the complaints were meritorious. On the contrary, the evidence shows that the police department thoroughly investigated all of the complaints made against Officer Tobin and found that none of the serious complaints were substantiated

by evidence. [Doc. 24, pp. 16:6—17:3]. Moreover, of the entirety of the complaints the Thomaston Police Department receives against its officers, less than five percent of them tend to be well-founded. [*Id.* at p. 99:13–18]. In the absence of some evidence that the complaints were related to the incidents alleged to have occurred here or that they were meritorious, a jury could not reasonably find that the City had a custom or policy that caused Plaintiff's injuries. The City is therefore entitled to summary judgment on Plaintiff's *Monell* claim.

### D.    Plaintiff's State-law Claims

Finally, Plaintiff asserts state-law claims against Officer Tobin for battery and intentional infliction of emotional distress. Officer Tobin moves for summary judgment on these claims, arguing that he is entitled to official immunity. Public officials enjoy official immunity under Georgia law when they are sued "in their individual capacities for discretionary actions within the scope of their official authority performed without actual malice or actual intent to cause injury." *Rodriguez v. Kraus*, 619 S.E.2d 800, 802 (Ga. Ct. App. 2005). Discretionary actions include decisions to arrest suspects. *Id.* Actual malice "does not include implied malice, or the reckless disregard for the rights and safety of others." *Selvy v. Morrison*, 665 S.E.2d 401, 405 (Ga. Ct. App. 2008). Instead, it requires a showing of "intent to do something wrongful or illegal." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999). In the alternative, a plaintiff can prove actual intent to cause injury, which is established by showing that the defendant intended to harm the

plaintiff, rather than simply showing that the defendant intended to do the act that resulted in the harm. *Hart v. Sirmans*, 784 S.E.2d 67, 69 (Ga. Ct. App. 2016).

### 1. Battery

To overcome official immunity on his battery claim, Plaintiff must show that Officer Tobin committed an unlawful touching of Plaintiff's person that was both offensive and malicious. *See Lawson v. Bloodsworth*, 722 S.E.2d 358, 359 (Ga. Ct. App. 2012). "An offensive touching is one which proceeds from anger, rudeness, or lust[, and] [t]he test is what would be offensive to an ordinary person . . . ." *Id.* at 359–60. The evidence, taken in the light most favorable to Plaintiff, establishes that Officer Tobin attempted to frisk Plaintiff for no reason whatsoever, manipulated Plaintiff into resisting the frisk so that he could employ his Taser, and then continuously tased Plaintiff while he was handcuffed and not resisting.[11] From this evidence, a jury could find that Officer Tobin acted with actual malice or intent to injure Plaintiff.[12] Thus, Officer Tobin's motion for summary judgment is **DENIED** as to this claim.

---

[11] Although Defendants present documentary evidence and expert testimony supporting their contention that Plaintiff was not tased more than once, Plaintiff's sworn deposition testimony that he was tased continuously and after being handcuffed defeats summary judgment. *See* [Doc. 22, pp. 99:12—101:24]. *See also United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) ("[A] litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment."); *Sears v. Roberts*, ___ F.3d ___, No. 15-15080, 2019 WL 1785355, at *3–4 (11th Cir. Apr. 24, 2019) (the district court erred in crediting the defendants' affidavits and objective evidence over the plaintiff's version of events).

[12] *Cf. Reed v. City of Lavonia*, 390 F. Supp. 2d 1347, 1369–70 (M.D. Ga. 2005) (denying official immunity to officer who repeatedly struck plaintiff with baton while he was on the ground and not resisting); *Tabb v. Veazy*, No. 1:05-cv-1642, 2007 WL 951763, at *7–8 (N.D. Ga. Mar. 28, 2007) (finding a fact issue as to maliciousness where officer hit plaintiff in the face with the butt of his handgun repeatedly while plaintiff was not resisting); *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 1999) ("[I]f [the defendant police officers] shot

2.    <u>Intentional Infliction of Emotional Distress</u>

To succeed on his intention infliction of emotional distress ("IIED") claim, Plaintiff must show that Officer Tobin "intentionally or recklessly, through conduct that is extreme and outrageous," caused Plaintiff severe emotional distress. *Reed v. City of Lavonia*, 390 F. Supp. 2d 1347, 1370 (M.D. Ga. 2005) (quoting *Ruble v. King*, 911 F, Supp. 1544, 1559 (N.D. Ga. 1995)). Conduct is extreme and outrageous if it would cause "an average member of the community" to feel "resentment against the actor, and leave him to exclaim 'outrageous!'" *Id.* (quoting *Ruble*, 911 F. Supp. at 1559). Furthermore, the requisite level of distress must be "so severe that no reasonable man could be expected to endure it." *Ruble*, 911 F. Supp. at 1559. The existence of IIED is a question of law, and the Court must deny summary judgment where "the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resultingly severe emotional distress." *Id.* (quoting *Yarbray v. Southern Bell Tel. & Tel. Co.*, 409 S.E.2d 835, 838 (Ga. 1991)).

Although reasonable people could find that Officer Tobin's conduct was extreme and outrageous, there is no evidence that Plaintiff suffered distress that was particularly severe. Although Plaintiff suffered burn marks and scrapes from his altercation with Officer Tobin and urinated on himself while being tased, he would likely have suffered

---

[the suspect] intentionally and without justification, then they acted solely with the tortious actual intent to cause injury.").

similar injuries had his arrest been lawful. Plaintiff points to no evidence in the record that he was humiliated, embarrassed, or injured in such a way that could be considered severe per se. *See, e.g., Reed*, 390 F. Supp. 2d at 1370–71 (the loss of a testicle from an officer's excessive use of force speaks for itself with regard to severe distress). Thus, Officer Tobin is entitled to summary judgment on Plaintiff's IIED claim.

## CONCLUSION

Based on the foregoing, the Defendants' Motion for Summary Judgment [Doc. 19] is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's federal excessive force claim against Officer Tobin, state-law IIED claim against Officer Tobin, and *Monell* claim against the City are **DISMISSED**. Plaintiff's remaining Section 1983 claims against Officer Tobin for unlawful detention, unlawful search, and false arrest, as well as his state-law claim against Officer Tobin for battery, will proceed to trial during the Court's August 2019 trial term. The Clerk is **DIRECTED** to terminate the City of Thomaston as a party.

**SO ORDERED**, this 21st day of May, 2019.

s/Tilman E. Self, III
**TILMAN E. SELF, III, Judge**
**UNITED STATES DISTRICT COURT**